Stephen C. Jensen (SBN 149,894)
Stephen.Jensen@kmob.com
Douglas G. Muehlhauser (SBN 179,495)
Doug.Muehlhauser@kmob.com
Perry D. Oldham (SBN 216,016)
Perry.Oldham@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff and Counterdefendant
NOMADIX, INC.

**JS-6**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| NOMADIX, INC., a Delaware corporation, | Civil Action No. CV07-1946 DDP (VBKx) |
| Plaintiff, | |
| v. | **[~~PROPOSED~~] DEFAULT JUDGMENT** |
| SECOND RULE LLC, a Delaware limited liability company, | Honorable Dean D. Pregerson |
| Defendant. | |
| AND RELATED COUNTERCLAIMS. | |

**NOTE: Changes made by the Court**

This matter comes before the Court on Plaintiff Nomadix, Inc.'s motion for default judgment.  After reviewing the materials submitted by Plaintiff, the Court adopts the following order.

## I. **BACKGROUND**

The dispute in this case centers on Plaintiff Nomadix's allegations that Defendant Second Rule LLC infringed U.S. Patents Nos. 6,130,892; 7,088,727; 6,636,894; 6,857,009; and 6,868,399 (the "patents-in-suit").  The patents-in-suit describe certain features of network gateway devices, including connecting user computers to foreign networks without any need to reconfigure the network settings of the user computers, redirecting browsers to a login page, for example, when a user has not paid for network access, and integrating a gateway device with a management system to automate billing users for network accesses.

On March 23, 2007, Nomadix sent a cease and desist letter to Second Rule asserting that Second Rule's NetAccess products were infringing the patents-in-suit.  Muehlhauser Decl., ¶ 11, Ex. 5.  On June 5, 2007, Nomadix served the Complaint it had filed earlier alleging infringement of the patents-in-suit.

The Court conducted a *Markman* hearing and on October 15, 2008, issued its order on claim construction.  Shortly afterward, Second Rule filed a motion for summary judgment requesting a ruling that numerous asserted claims of the patents-in-suit were invalid.  On January 16, 2009, the Court denied Second Rule's motion.

On January 26, 2009, before the parties had completed fact and expert discovery, Second Rule's counsel moved to withdraw, asserting Second Rule's inability to pay for further representation and also Second Rule's decision to cease business operations.  On January 29, 2009, the Court granted Second Rule's counsel's request to withdraw and ordered that if new counsel for Second

Rule did not appear by February 12, 2009, the Court would strike Second Rule's Answer.

On January 29, 2009, Nomadix requested a temporary restraining order to preclude Second Rule from engaging in any sale or transfer of the alleged infringing technology.  The Court granted the request for a 20-day TRO on January 30, 2009, which became effective February 2, 2009, upon Nomadix's submission of the undertaking.  The TRO expired on February 20, 2009, and the Court entered a preliminary injunction on that date.

As of February 12, 2009, no appearance had been made by any new counsel for Second Rule.  Per its order, the Court struck Second Rule's Answer on February 18, 2009, and Nomadix requested entry of default on the same day.  On February 19, 2009, the Clerk entered Second Rule's default, and Nomadix moved for default judgment on February 20, 2009.

## II.  DISCUSSION

### A.  Procedural Requirements for Entry of Default Judgment

#### 1.  Legal Standard

Local Civil Rule 55-1 provides that an application to the Court for default judgment shall be accompanied by a declaration in compliance with Federal Rule of Civil Procedure 55(b)(1) and/or 55(b)(2) and include the following:

    (a)    When and against what party the default was entered;

    (b)    The identification of the pleading to which default was entered;

    (c)    Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;

    (d)    That the Servicemembers Civil Relief Act (50 App. U.S.C. § 521) does not apply; and

    (e)    That notice has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2).

1    Local Civ. R. 55-1.

2        **2.    Analysis**

3        Nomadix has shown (a) that Second Rule's Answer has been stricken,

4    Second Rule has stated it will not defend against Nomadix's Complaint, and

5    Second Rule has stated it has no intention of obtaining new counsel and remains

6    unrepresented; (b) that the requirements of Fed. R. Civ. P. 55(a) have been

7    satisfied making entry of default appropriate, and Nomadix has requested and

8    the Clerk of the Court has entered Second Rule's default; (c) that Second Rule

9    was not at any time relevant to this action an infant or an incompetent person or

10   in the armed forces of the United States; (d) that the request for entry of default

11   judgment was served on Second Rule in compliance with Fed. R. Civ. P.

12   55(b)(2).   Muehlhauser Decl. ¶¶ 2-7.   Thus, Nomadix has shown that the

13   procedural requirements for entry of default judgment are satisfied.

14   **B.    Substantive Basis for Entry of Default Judgment**

15       **1.    Legal Standard**

16       The Court has discretion in determining whether to enter default

17   judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Ninth

18   Circuit has outlined the following seven factors that courts may take into

19   account when exercising their discretion as to whether to enter default

20   judgment:  (1) the possibility of prejudice to the plaintiff;  (2) the merits of the

21   plaintiff's substantive claim;  (3) the sufficiency of the complaint;  (4) the sum

22   of money at stake;  (5) the possibility of a dispute concerning material facts;  (6)

23   whether the default was due to excusable neglect; and (7) the strong policy

24   underlying the Federal Rules of Civil Procedure favoring decisions on the

25   merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

26       **2.    Analysis**

27           **a.    Possibility of Prejudice**

28       The first *Eitel* factor calls on the Court to consider whether the plaintiff

-3-

will suffer prejudice if a default judgment is not entered. Here, the potential prejudice to Nomadix favors granting default judgment. In the absence of a default judgment and a permanent injunction, Second Rule would be free to continue to infringe Nomadix's patents by, for example, resuming business operations, liquidating its inventory of NetAccess devices as it winds up the LLC or selling the NetAccess software so that another company can continue the infringing product line. Furthermore, Nomadix would likely be left without other recourse for recovery. This factor weighs in favor of entering default judgment.

### b.   Substantive Merits and Sufficiency of the Complaint

The next two *Eitel* factors focus on whether the plaintiff has stated a claim upon which relief may be granted. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Here, Nomadix has alleged that Second Rule infringed each of the five patents-in-suit in violation of 35 U.S.C. § 271, which provides in pertinent part:

> (a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent.

> (b) Whoever actively induces infringement of a patent shall be liable as an infringer.

> (c) Whoever offers to sell or sells within the United States . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use,

-4-

1   shall be liable as a contributory infringer.

2   35 U.S.C. § 271.  In addition, 35 U.S.C. §§ 100(d), 261, 281 provide that a

3   successor in title to the person to whom a patent issued, such as an owner by

4   assignment, has a remedy by civil action for infringement of the patent.

5   In its Complaint, for each of the asserted patents, Nomadix pled, *inter*

6   *alia*, (1) that Nomadix owned the patent by assignment; (2) that Second Rule

7   had infringed the patent by making, using, promoting, selling, importing and/or

8   offering to sell within the United States network gateway devices, including its

9   NetAccess devices, covered by one or more claims of the patent; (3) that Second

10   Rule had actively induced others to infringe the patent; and (4) that Second Rule

11   had contributorily infringed the patent.  Complaint ¶¶ 3, 8-58.  Nomadix thus

12   provided a plain statement of its claims that showed it was entitled to relief, as

13   Rule 8(a)(2) requires.

14   Nomadix has pled a *prima facie* case of infringement and, in considering

15   whether to grant default judgment, a court takes the well-pled factual allegations

16   in the complaint as true, except those relating to damages.  *TeleVideo Systems,*

17   *Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  Nomadix's Complaint

18   therefore establishes the merits of its infringement claims for purposes of default

19   judgment.

20   Even so, Nomadix need not rely exclusively on the factual allegations in

21   its Complaint to make out a *prima facie* case of infringement, for Nomadix's

22   expert, Dr. Stuart G. Stubblebine, has prepared a lengthy report detailing how

23   each NetAccess device satisfies every limitation of each of several claims from

24   each of the asserted patents.  It is Dr. Stubblebine's opinion that Second Rule's

25   NetAccess products infringe Claims 5, 6 and 8 of U.S. Patent No. 6,130,892

26   ("the '892 patent"); Claims 11, 12, 13, 15, 17, 19 and 20 of U.S. Patent No.

27   7,088,727 ("the '727 patent"); Claims 1, 5, 6, 7, 8, 9 and 10 of U.S. Patent No.

28   6,636,894 ("the '894 patent"); Claims 1, 3, 4, 6, 8, 13, 15, 16, 18, 20 and 21 of

1   U.S. Patent No. 6,868,399 ("the '399 patent"); and Claims 1, 2, 6, 8, 23, 24, 28

2   and 30 of U.S. Patent No. 6,857,009 ("the '009 patent").  Stubblebine Decl. Ex.

3   19.

4          Considering Dr. Stubblebine's qualifications and the detailed analysis

5   supporting his opinions, in addition to Nomadix's pleading of patent

6   infringement, the Court finds that the second and third *Eitel* factors strongly

7   support entry of default judgment.

8          **c.      Amount at Stake**

9          As the fourth *Eitel* factor, the Court may consider the sum of money at

10  stake in relation to the seriousness of the defendant's conduct.  Here, Nomadix

11  is seeking enhanced damages in an amount to be proven, pre- and post-judgment

12  interest, attorneys' fees and injunctive relief.    This demand for relief is not

13  disproportionate to the seriousness of Second Rule's conduct.  This factor favors

14  entry of default judgment.

15         **d.      Possibility of Dispute**

16         The fifth *Eitel* factor is the possibility of dispute as to any material facts

17  in the case.  Upon entry of default, all factual allegations set forth in the

18  Complaint, except those relating to the amount of damages, will be taken as

19  true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

20  Because Second Rule's Answer has been stricken, because Second Rule has

21  stated it will not defend against Nomadix's claims and because Second Rule is

22  unrepresented and incapable of appearing, there can be no genuine dispute as to

23  any material fact.  This factor weighs in favor of entry of default judgment.

24         **e.      Possibility of Excusable Neglect**

25         The sixth *Eitel* factor asks courts to consider whether the default might

26  have resulted from excusable neglect.  The facts do not admit such a possibility

27  in this case.  Second Rule has not argued excusable neglect and was properly

28  served.  Muehlhauser Decl. ¶ 2.  Second Rule actively participated in this

-6-

litigation for nearly two years.  Moreover, Second Rule was aware of the consequences of proceeding unrepresented, including the possibility of default judgment.  Marshall Decl. (Docket No. 236) ¶ 7.  Accordingly, the Court finds no evidence of any excusable neglect, and thus this factor weighs in favor of default judgment.

### f.   Policy for Deciding on the Merits

The final *Eitel* factor that courts may consider stems from the policy of the Federal Rules of Civil Procedure favoring decisions on the merits.  Although favored, decisions on the merits are sometimes not practicable.  Here, the striking of Second Rule's Answer, Second Rule's stated position that it will not defend against Nomadix's claims, and Second Rule's inability to appear because it is unrepresented make a decision on the merits impractical, if not impossible.  Moreover, discovery had not even been completed at the time that Second Rule's counsel withdrew and Second Rule became unrepresented.

The preference to decide cases on the merits does not preclude the granting of default judgment.  *Pepsico*, 238 F. Supp. 2d at 1177.  The Court finds that default judgment against Second Rule is appropriate in this case.

### C.   Plaintiff's Remedies

Pursuant to Federal Rule of Civil Procedure 8(a)(3), the plaintiff must make a demand for judgment for the relief it seeks in the pleading.  When a Court enters default judgment, the relief it awards may not be "different in kind [or] exceed in amount that prayed for in the [complaint]."  Fed. R. Civ. P. 54(c).  In its Complaint, Nomadix sought (1) a permanent injunction enjoining Second Rule from infringing the five patents-in-suit, (2) compensatory damages, (3) enhanced damages for willful infringement, (4) pre-judgment interest, and (5) attorneys' fees.  Compl. ¶¶ A-H (pp. 8-9).  Through its Motion, Nomadix seeks (1) a permanent injunction, (2) at least $ 3,146,585 in compensatory damages (lost profits and a reasonable royalty), (3) pre-judgment interest in the amount of

1  $83,730, and (4) attorneys' fees in the amount of $66,531.70 or as otherwise
2  calculated pursuant to Local Rule 55-3.   The Court substantially grants
3  Nomadix's request.

### 1.   Permanent Injunction

5  District courts "may grant injunctions in accordance with the principles of
6  equity to prevent the violation of any right secured by patent, on such terms as
7  the court deems reasonable."  35 U.S.C. § 283.  Permanent injunctive relief is
8  appropriate where a defendant is given sufficient notice of the possibility that a
9  default judgment will be entered yet fails to remedy the infraction that led to the
10 initial entry of default.  *See SEC v. First Fin. Group, Inc.*, 659 F.2d 660, 669
11 (5th Cir. 1981).  In exercising its discretion to provide injunctive relief in a
12 patent case, the Court considers whether (1) the plaintiff would suffer
13 irreparable injury; (2) remedies available at law are inadequate to compensate
14 for the injury; (3) the balance of the hardships between the plaintiff and
15 defendant warrants equitable relief; and (4) a permanent injunction would not
16 disserve the public interest.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,
17 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).

### a.   Irreparable Injury and Inadequate Remedy

19 Considering the first factor, a high possibility of irreparable harm to
20 Nomadix exists based on the likelihood that Second Rule will transfer the
21 alleged infringing NetAccess product line to a successor who would then carry
22 on the infringing conduct of making and selling those products.  On January 26,
23 2009, Nomadix learned that Second Rule would be ceasing business operations,
24 and Nomadix has warranted concerns that Second Rule may take immediate
25 steps to wind up the LLC and transfer all or part of the accused infringing
26 product line to (or otherwise assist) a successor who would continue the alleged
27 infringing activities.  Indeed, Second Rule acquired the alleged infringing
28 product line in just that way when it acquired the assets of IP3 Networks,

1  against whom Nomadix had been litigating patent infringement claims on the

2  same product line.  Scott Decl. ¶¶ 3-8 (Docket No. 246).

3       The Court finds that Nomadix would suffer irreparable harm from any

4  further sale or transfer by Second Rule of the alleged infringing technology or

5  from Second Rule in any way assisting another to make, use or sell that

6  technology, and also, in considering the second factor, finds that remedies

7  available at law would be inadequate to compensate Nomadix for such harm.

8            **b.    Balance of Hardships**

9       Second Rule has announced it is ceasing business operations.   Any

10  possible harm to Second Rule from the issuance of an injunction is far

11  outweighed by the harm to Nomadix of continuing infringement by Second

12  Rule or by a successor in the absence of an injunction.

13            **c.    Public Interest**

14       The patent laws promote progress by offering a right of exclusion for a

15  limited period as an incentive to inventors to risk the often enormous costs in

16  terms of time, research, and development.  *Kewanee Oil Co. v. Bicron Corp.*,

17  416 U.S. 470, 94 S. Ct. 1879 (1974).  The Federal Circuit has acknowledged the

18  significant public interest in encouraging investment in new products and

19  protecting the exclusionary rights conveyed in valid patents.  *Abbott Labs. v.

20  Sandoz, Inc.*, 544 F.3d 1341, 1362-63 (Fed. Cir. 2008).  As Second Rule has

21  confirmed it will not challenge Nomadix's patents, including their validity, the

22  public interest will not be disserved by the permanent injunctive relief that

23  Nomadix seeks.

24       Without an injunction, Second Rule's infringing activities may continue

25  unchecked, or a Second Rule successor may continue those activities, and

26  Nomadix will have no adequate remedy at law.  Accordingly, the Court finds

27  that the permanent injunction requested by Nomadix and filed concurrently with

28  this Order is appropriate for entry.

### 2.  **Damages**

In a patent case, upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . . .  When the damages are not found by a jury, the court shall assess them.  In either event the court may increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.  In appropriate patent cases, a damage award may comprise lost profits for a portion of the infringer's sales and a reasonable royalty for the remainder.  *See, e.g.*, *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989); *see also Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).

The Court has discretion in determining whether an evidentiary hearing is necessary for entry of a default judgment for money damages, or whether to rely upon detailed affidavits or documentary evidence.  Fed. R. Civ. P. 55(b)(2); *see also Pope v. United States*, 323 U.S. 1, 12, 65 S. Ct. 16, 89 L. Ed. 3 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or ***by computation from facts of record***, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.") (emphasis added); *Taylor v. Ballwin*, 859 F.2d 1330, 1333 (8th Cir. 1988) (ordering district court to enter default judgment and instructing that an evidentiary hearing on damages was not necessary as plaintiff's damages were capable of being computed on the basis of facts of record).  Nomadix has submitted detailed support for its damages demand, including the well-supported declaration of its expert, Mr. Christian Tregillis, and the Court finds that, in this case, an evidentiary hearing is not necessary and that damages may be appropriately calculated from the facts of record.

#### a.  **Lost Profits**

Lost profits are available as damages when a patent owner can show

"there was a reasonable probability that, but for the infringement, it would have made the infringer's sales." *State Industries*, 883 F.2d at 1577.  It is well settled that a patent holder may make this showing by satisfying the standard set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152 (6th Cir. 1978). *See, e.g.*, *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1372-73 (Fed. Cir. 2008); *State Industries*, 883 F.2d at 1577.  To recover lost profits under the *Panduit* test, a patent owner may demonstrate "'(1) a demand for the patented product, (2) an absence of acceptable noninfringing substitutes, (3) the manufacturing and marketing capability to exploit the demand, and (4) the amount of profit the patent owner would have made.'"  *Cohesive Techs.*, 543 F.3d at 1373 (quoting *Standard Havens Prods., Inc. v. Gencor Indus.*, Inc., 953 F.2d 1360, 1373 (Fed. Cir. 1991) and citing *Panduit*, 575 F.2d at 1156).

The Court finds that Nomadix, through the Declarations of Messrs. Tregillis, Stubblebine and Scott, has shown (1) a demand for the patented product (Tregillis Decl. ¶¶ 13-18); (2) the virtual absence of acceptable noninfringing substitutes (Tregillis Decl.  ¶¶ 19-24, Stubblebine Decl. ¶¶ 5-45); (3) manufacturing and marketing capability to exploit the demand (Tregillis Decl. ¶¶ 25-27; Scott Decl. ¶ 6); and (4) the amount of profit that Nomadix would have made (Tregillis Decl. ¶¶ 28-35).  On the present record, Nomadix has shown that at least 97.96% of Second Rule's sales would have gone to Nomadix but for Second Rule's infringement, and that Nomadix had the capacity to have made those sales with its own products.  Following settled guidance, *see Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549-51 (Fed. Cir. 1995) (en banc), Nomadix has further shown the convoyed sales of additional items and services that it would have made but for Second Rule's infringing sales.  Tregillis Decl. ¶ 34; Scott Decl. ¶ 7.

Having calculated Nomadix's profit per unit, based upon Nomadix's financial records showing revenue and costs for the patented gateway product

-11-

1   and the demonstrated convoyed sales, Mr. Tregillis multiplied that profit per

2   unit by the 97.96% of Second Rule's sales that would have gone to Nomadix to

3   show a lost profit amount of $3,125,349.  The Court finds that Nomadix is

4   entitled to $3,125,349 in lost profit damages.

5                   **b.    Reasonable Royalty**

6          Nomadix has also shown that, for the remainder of Second Rule's sales

7   (i.e., 2.04% of the units it sold), Nomadix is entitled, at a minimum, to a

8   reasonable royalty.   35 U.S.C. § 284; *State Indus.*, 883 F.2d at 1577.   A

9   reasonable royalty may be determined by assessing the comprehensive list of

10  factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp.

11  1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971).  *See,*

12  *e.g.*, *Minks v. Polaris Indus.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008); *Unisplay,*

13  *S.A. v. American Elec. Sign Co.*, 69 F.3d 512, 517 n.7 (Fed. Cir. 1995).  After

14  careful consideration of each of these factors, Mr. Tregillis concluded that

15  Nomadix is entitled to a reasonable royalty of 20% as a combined royalty for

16  the five patents-in-suit.  Tregillis Decl. ¶¶ 36-75.

17         Mr. Tregillis also gave careful consideration to determining what is the

18  appropriate royalty base to which the royalty rate should be applied. In

19  determining the appropriate royalty base, Mr. Tregillis examined Second Rule's

20  sales and marketing information, and also discussed Second Rule's business

21  model with Nomadix's Chief Operations Officer, Mr. Scott.  *Id.* ¶ 76.  From this

22  information, Mr. Tregillis concluded that the appropriate royalty base includes

23  Second Rule's infringing software, hardware, and other sources of revenue,

24  including service contracts and other modules.  *Id.*   The Court finds that the

25  reasonable royalty damages to which Nomadix is entitled may be derived by

26  applying the reasonable royalty rate of 20% to the royalty base identified by Mr.

27  Tregillis, showing that Nomadix is entitled to reasonable royalty damages of

28  $21,236.  *Id.* ¶ 78.

1    Adding the lost profit and reasonable royalty components results in total

2    damages of $3,146,585, and the Court accordingly finds that Nomadix's

3    damages are $3,146,585.

4              c.        **Enhanced Damages**

5    Together, the lost profit and reasonable royalty components result in total

6    damages of $3,146,585.  Nomadix also seeks an enhancement of damages up to

7    three times in accordance with 35 U.S.C. § 284.  To award enhanced damages, a

8    district court must find willful infringement or bad faith.  *Beatrice Foods Co. v.*

9    *New England Printing and Lithographing Co.*, 923 F.2d 1576, 1579 (Fed. Cir.

10   1991); *see Cohesive Techs., Inc.*, 543 F.3d at 1374 (*Beatrice Foods* "willful

11   infringement or bad faith" holding still governs).  These limited circumstances

12   are appropriate because enhanced damages are awarded "only as a penalty for

13   an infringer's increased culpability," and not "to award the patentee additional

14   compensation."  *Beatrice Foods*, 923 F.3d at 1579.

15   District courts "retain[] discretion to enhance damages."  *Electro-*

16   *Scientific*, 247 F.3d at 1353.  "A finding of willfulness does not mandate"

17   enhancement; rather, the "'paramount determination'" for enhanced damages

18   "'is the egregiousness of the defendant's conduct based on all the facts and

19   circumstances.'"  *Id.* (quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826

20   (Fed. Cir. 1992)).  For example, where opinions from counsel establish a good

21   faith belief as to the invalidity of a patent that is the subject of the litigation, the

22   court may choose not to enhance damages, even where substantial evidence

23   supports a jury's finding of willful conduct.  Id. at 1353-54. Where a court

24   chooses to enhance damages, it must "explain and articulate through findings

25   the basis upon which it concludes that there has been willful infringement or

26   bad faith."  *Beatrice Foods*, 923 F.3d at 1578.

27   Nomadix argues that an enhancement is warranted because Second Rule's

28   infringement was willful.

-13-

### i. <u>Willfulness</u>

The Federal Circuit set forth the standard for determining whether enhanced damages for willful infringement under § 284 were warranted in *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007).  In *Seagate*, the court held that "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness."  497 F.3d at 1371.  To establish willful infringement under *Seagate*, a patentee must make a two-step showing.  First, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  *Id.*  Second, "[i]f this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious it should have been known to the accused infringer."  *Id.*; *see id.* at 1371 n.5; *id.* at 1385 (Newman, J., concurring).  Willful infringement is determined by the totality of the circumstances.  *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006).

Nomadix argues that willfulness is established here on two primary bases.  First, Nomadix pled that Second Rule's infringement was deliberate and willful.  Compl. ¶¶ 14, 20-21, 30-31, 40, 48, 56.  Nomadix emphasizes that its well-pleaded factual allegations are taken as true. *See SKLO Podebrady v. Euro Expo 3000, Inc.*, 2007 WL 4191715 (D. Minn. 2007).  Second, Nomadix points to its detailed cease-and-desist letter, which included seventeen pages of charts that demonstrated, limitation by limitation, how the NetAccess devices infringed each claim and also included a CD with print-outs fo data packets captured during operation of an actual NetAccess device.  Muehlhauser Decl., Ex. 5.  Second Rule continued to make, use, sell, and offer the device throughout litigation.

Depending on the circumstances, courts considering the willful

infringement on default judgment have both found willful infringement and refused to do so.  In *Rhino Assoc., L.P. v. Berg Mfg. & Sales Co.*, 531 F. Supp. 2d 652, 658-59 (M.D. Pa. 2007), the district court refused to find that the defaulting defendant had willfully infringed because there was evidence on the record that the defendant had attempted to design around the patent.  Other district courts, however, have found willful infringement on the basis of the defaulting defendant's failure to respond to the factual allegations in the Complaint.  *See SKLO Podebrady*, 2007 WL 4191715 at *2; *Transclean Corp. v. Bill Clark Oil Co., Inc.*, 2005 WL 2406036, *4 (D. Minn. 2005), *overruled on other grounds by Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298 (Fed. Cir. 2007).

Taking the allegations in the Complaint together with the detailed letter and continued infringement throughout litigation, the Court finds that there was willful infringement.

### ii.    Enhancement

Although the Court finds willful infringement, the Court declines to enhance Nomadix's damages under the circumstances.  The procedural posture of this case precludes the preferred determination of willful infringement on the merits.  Prior to its basic withdrawal from this case, Second Rule had invalidity defenses.  Those defenses that the Court did consider on Summary Judgment, though unsuccessful, did not appear frivolous.  Accordingly, while the Court deems Second Rule to have admitted that it willfully infringed because of its default, the Court is hesitant to treble damages where the entire circumstances of the litigation suggest that invalidity defenses were non-frivolous, which counsels against a finding that the circumstances were so egregious as to deserve an enhancement on willful infringement grounds.

### d.    Interest

According to statute, and upon finding for the patent claimant, here

Nomadix, the Court awards interest, as fixed by the Court, together with damages. 35 U.S.C. § 284. The Court awards pre-judgment interest as calculated by Mr. Tregillis, in the amount of $ 83,730.

### 3.   Attorneys' Fees

Nomadix seeks its attorneys' fees in the amount suggested for in the schedule of Local Civ. R. 55-3. For judgment amounts over $100,000, the schedule provides for attorneys' fees in the amount of $5,600 plus 2% of the amount over $100,000. Thus, Nomadix seeks attorneys' fees of at least $66,531.70 ($5,600 + (.02 x $3,046,585)), which figure is based on an unenhanced damages award. As indicated above, the Court finds that Nomadix's damages are $3,146,585. The patent law authorizes a court to award attorneys' fees in exceptional cases, such as, for example, when patent infringement is willful or when a party has engaged in litigation misconduct through vexatious tactics or otherwise. For the reasons provided below, the Court finds that this is an exceptional case under 35 U.S.C. § 285, and awards Nomadix attorneys' fees in the amount of $ 66,531.70.

### a.   Willful Infringement

This Court has broad discretion to declare a case exceptional and may consider the presence of such factors as "willful infringement, bad faith, litigation misconduct, and unprofessional behavior." *nCube Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1319, 1325 (Fed. Cir. 2006). As an initial matter, because the Court has struck Second Rule's answer making entry of default appropriate, the Court finds Second Rule's infringement was willful in accordance with Nomadix's allegations made in the Complaint. *TeleVideo*, 826 F.2d at 917-18. That finding weighs in favor of finding this case exceptional and hence awarding the attorneys' fees sought by Nomadix. Beyond the allegations in its pleadings, however, Nomadix strengthens its *prima facie* showing of willful infringement by pointing out that in March of 2007, it served

a cease and desist letter upon Second Rule asserting, with 17 pages of detailed charts, that Second Rule infringed each of the five patents-in-suit.  After that notice, Second Rule continued its infringing conduct at all times prior to and after Nomadix's service of the Complaint upon Second Rule in June of 2007, up until the present announcement that it would cease its business operations, even though Second Rule's counsel had admitted that Nomadix could make out a *prima facie* case of infringement.  Muehlhauser Decl. Ex. 6.

### b.  <u>Spoliation</u>

In addition to *prima facie* willful infringement, Nomadix offers further bases for finding this case exceptional.  For one of the additional bases, Nomadix presents compelling evidence that Second Rule engaged in falsifying its software source code for production to Nomadix by deleting software instructions related to the infringement.  In an earlier motion for spoliation sanctions, Nomadix asserted that Second Rule had intentionally removed important software instructions from the source code it produced to Nomadix. Second Rule opposed by arguing that it had produced the source code unaltered as it existed on its internal servers.  The Court ordered Second Rule to forensically duplicate its computer disk drives containing software and to provide the pertinent information from those disk drives to Nomadix.  Docket No. 222.

Nomadix has now provided evidence, based on the newly ordered production of software, that the source code residing on Second Rule's servers did in fact include the software instructions that were omitted in the earlier production to Nomadix.  Muehlhauser Decl. ¶¶ 14-21, Exs. 8-12.  This evidence directly contradicts Second Rule's explanation to the Court, and strongly shows that Second Rule altered its software source code for production to Nomadix.

Adding misrepresentation to this conduct, Second Rule employee, Christopher Bradley, swore by declaration before this Court, that he was

-17-

1  unaware of a particular software module that, according to Nomadix, should
2  have been expressly referenced in Second Rule's software source code but was
3  not, due to the asserted spoliation.  Docket No. 201 (Bradley Decl.) ¶¶ 5-7, 15-
4  17.  However, evidence newly produced from Second Rule's computer hard
5  disks includes an e-mail from Mr. Bradley, written just a few months before he
6  submitted his declaration to this Court, wherein Mr. Bradley not only confirms
7  his knowledge of the software module, by name, but in fact indicates to a co-
8  worker that Second Rule is still using that software module and that Mr. Bradley
9  would prefer to remove it from the system.  Muehlhauser Decl. Ex. 7.

10      As a further basis for finding this case to be exceptional, Nomadix
11  provides evidence of Second Rule's conduct during the litigation which,
12  according to Nomadix, shows vexatious tactics.  The Court agrees.

13      First, putting falsification aside, Second Rule failed to timely produce its
14  software source code that was requested in September of 2007.  Second Rule
15  forced Nomadix to move to compel, and only after Nomadix prepared its brief,
16  did Second Rule then produce seventeen additional versions of the software.
17  Second Rule then represented to Magistrate Judge Kenton that it had produced
18  all of its software.  Nomadix discovered later that Second Rule had been
19  withholding another version, and discovered still later that Second Rule had
20  been withholding unaltered versions of the software which it had materially
21  modified for production to Nomadix.

22      As another example, Second Rule withheld damages discovery for
23  months on the questionable basis that such discovery was not due until Nomadix
24  made a *prima facie* showing of patent infringement.  Second Rule filed a motion
25  requesting a stay of damages-related discovery on exactly that basis.  Nomadix
26  points out that, in October, just days before the motion would be heard and
27  having delayed discovery for many weeks, Second Rule suddenly withdrew the
28  motion, representing that it would immediately begin rolling production of

-18-

damages-related discovery.  Yet, by November, Second Rule still had not completed production of damages-related materials and was still forcing Nomadix to seek the Court's assistance.  *See* Docket No. 188.

For yet another example, Nomadix explains that Second Rule withheld production of thousands of e-mails responsive to Nomadix's document requests on the ground that they contained sensitive customer passwords.  Before Judge Kenton, Second Rule took the position that it would only produce the e-mails if Nomadix would pay $10,000 to have them appropriately redacted.  Yet, some weeks later, after Nomadix had paid the $10,000, Second Rule cast doubt upon the sincerity of its concern for customer passwords when, in trying to demonstrate good faith on Nomadix's motion for spoliation sanctions, it relied upon the argument that it had freely and willingly produced to Nomadix a super-administrator password with which Nomadix could gain complete access to any of Second Rule's customers' devices.  Docket No. 200 at 12:2-3.

While the Court did not find enhancement appropriate on the basis of willful infringement alone, Nomadix has presented significant evidence supporting spoliation.  Although Second Rule previously opposed Nomadix's charges of spoliation, Nomadix has presented additional evidence here that remains unopposed.  The additional circumstances raised by Nomadix, taken in combination with the willful infringement issues, make this case an exceptional one deserving of attorneys' fees.  Accordingly, the Court finds this case exceptional and awards Nomadix its attorneys' fees in the amount requested of $ 66,531.70.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Nomadix's request for default judgment.  Specifically, the Court grants permanent injunctive relief as specified in the Permanent Injunction filed concurrently herewith and awards a total of $3,296,846.70 to Nomadix as follows:

1  The Court finds that Nomadix's demonstrated lost profits are $3,125,349,

2  and that, in accordance with the *Georgia-Pacific* factors, the reasonable royalty

3  rate is 20%, which, when applied to the appropriate royalty base, leads to

4  reasonable royalty damages of $21,236.  Nomadix is entitled to combined lost

5  profit and reasonable royalty damages for a total amount of $3,146,585.  Pre-

6  judgment interest shall apply to these damages, resulting in an award of

7  $83,730.

8  The Court also awards Nomadix attorneys' fees of $ 66,531.70.

9

10  IT IS SO ORDERED.

11  Dated: March 31, 2009

12  Dean D. Pregerson
    United States District Judge